STATE OF WISCONSIN—DEPARTMENT OF CORRECTIONS, Petitioner-Respondent-Petitioner,

v.

David H. SCHWARZ, Administrator, Division of Hearings and Appeals, Respondent,

James DOWELL, Respondent-Appellant.

Supreme Court

*No. 03–2001. Oral argument February 3, 2005.—Decided March 24, 2005.*

2005 WI 34

(Also reported in 693 N.W.2d 703.)

226

For the petitioner-respondent-petitioner there were briefs by *Robert G. Pultz,* Madison, and oral argument by *Robert G. Pultz.*

For the respondent-appellant there was a brief and oral argument by *Michael K. Gould,* assistant state public defender.

¶ 1. N. PATRICK CROOKS, J. The Department of Corrections (DOC) seeks review of a published decision of the court of appeals, *DOC v. Schwarz,* 2004 WI App 136, 275 Wis. 2d 225, 685 N.W.2d 585, which reversed an order of the Milwaukee County Circuit Court, Timothy G. Dugan, Judge. The circuit court had reversed a decision from the Division of Hearings and Appeals (DHA) that held the DOC did not have jurisdiction under Wis. Stat. § 304.072(3)[1] (2001–02) to revoke the parole of Respondent James Dowell (Dowell). The issue presented on appeal is whether § 304.072(3) provides the DOC jurisdiction to revoke parole for any violation occurring between the offender's initial release on parole and the date of discharge on the underlying sentence, or whether its jurisdiction is limited to violations occurring during the offender's current period of parole.

¶ 2. We hold that the phrase "term of supervision" in Wis. Stat. § 304.072(3) is ambiguous, since it can reasonably be interpreted to apply to both the current

---

[1] All other references to the Wisconsin Statutes are to the 2001–02 version unless otherwise indicated.

term of supervision and any time prior to the final discharge from an underlying sentence. We rely upon extrinsic sources such as the legislative history and relevant case law behind § 304.072(3), and the interplay among parole statutes to determine that the phrase "term of supervision" was intended to apply to all parole violations that occur before the offender's date of discharge from his or her entire sentence. We conclude that the legislature intended to promote offender accountability and, therefore, the DOC had jurisdiction to revoke Dowell's parole for a violation that he committed during his first period of parole supervision.

I

¶ 3. The relevant facts of this case are not in dispute. On March 30, 1994, Dowell was convicted of two counts of armed robbery and one count of operating a vehicle without owner's consent in Milwaukee County Circuit Court. Judge Maxine A. White sentenced him to 90 months in Wisconsin State Prisons.[2] After serving nearly three years of his sentence, Dowell was paroled in May 1997. However, the DOC revoked his parole in March 1998 and returned him to prison.

¶ 4. Dowell served three more years in prison and was paroled again on July, 17, 2001, due to Wisconsin's mandatory release law, Wis. Stat. § 302.11(1).[3] Subsequently, while Dowell was on parole, the DOC became aware of evidence that Dowell's DNA matched semen

---

[2] Dowell was sentenced to 90 months for both counts of armed robbery, and two years for operating a vehicle without the owner's consent. However, Judge White ordered that Dowell serve the three sentences concurrently.

[3] Wisconsin Stat. § 302.11(1) states in relevant part: "The warden or superintendent shall keep a record of the conduct of each inmate, specifying each infraction of the rules. . . . each

found on the clothing of a victim of a sexual assault and armed robbery that had been committed on May 23, 1997, during Dowell's first of two periods of parole. The DOC was unaware of information linking Dowell to these crimes when it recommended a revocation of Dowell's first parole in March 1998. Based on the new allegations, the DOC sought to revoke Dowell's second parole and force him to serve the final two years, one month, and 14 days of his sentence in prison.[4]

¶ 5. After a revocation hearing on June 18, 2002, an Administrative Law Judge (ALJ), Andrew Riedmaier, ruled that the DOC lacked jurisdiction to revoke parole based on conduct committed during an earlier parole term. He concluded that any subsequent parole is a new and distinct "term of supervision." The ALJ relied on Wis. Stat. § 304.072(3), which limits the DOC's jurisdiction to actions taken prior to the expiration of the parolee's "term of supervision." The ALJ determined that since the second revocation request was not during the same "term of supervision" as the alleged violation, the DOC did not have jurisdiction.

¶ 6. The DOC appealed this ruling to the Administrator of the DHA, David H. Schwarz (Schwarz).

---

inmate is entitled to mandatory release on parole by the department. The mandatory release date is established at two-thirds of the sentence."

[4] The DOC does not allege that Dowell committed any violations during his term of parole supervision after his mandatory release. It alleges that Dowell violated Rules 1 and 11 of his Parole Conditions during his first period of parole. Rule 1 states: "You shall avoid all conduct which is in violation of federal or state statute, municipal or county ordinances or which is not in the best interest of the public welfare or your rehabilitation." Rule 11 states in relevant part: "You shall not purchase, possess, own or carry any firearm or any weapon unless you get approval in advance from your agent."

Schwarz affirmed the ALJ's decision and agreed with the interpretation of Wis. Stat. § 304.072(3), that the DOC's jurisdiction applies only to the current term of supervision, not a subsequent term of supervision. Moreover, Schwarz held that the ALJ's decision was consistent with the DOC's past practices, as the Department has never sought to revoke any person's parole supervision based on conduct that occurred during a previous term of parole.

¶ 7. The DOC petitioned for certiorari review in Milwaukee County Circuit Court. On May 2, 2003, the circuit court, Timothy G. Dugan, Judge, reversed the decision of the DHA. The court held that the phrase "term of supervision" in Wis. Stat. § 304.072(3) could reasonably be interpreted to mean a prisoner's entire sentence. The court concluded that the purpose of the statute was to codify *State ex rel. Cox v. DHSS,* 105 Wis. 2d 378, 314 N.W.2d 148 (Ct. App. 1981), by extending the DOC's jurisdiction beyond a parolee's final date of discharge, when revocation proceedings are commenced before the discharge date. Accordingly, the court held that the jurisdiction of the DOC exists until the parolee's final discharge from his or her entire sentence. The court read § 304.072(3) in conjunction with Wis. Stat. § 304.06(3) and other statutes governing parole supervision. The DHA appealed.

¶ 8. The court of appeals reversed the circuit court in a split decision. It concluded that Wis. Stat. § 304.072(3) unambiguously limits the DOC to pursuing parole revocation for violations committed during a parolee's current parole term of supervision. Judge Patricia S. Curley, writing for the majority, determined that the phrase "term of supervision" in § 304.072(3) means the current term of supervision. Unlike the circuit court, the court of appeals did not consider

230

extrinsic sources when interpreting § 304.072(3), because it found the plain language unambiguous. *Schwarz*, 275 Wis. 2d 225, ¶ 11. The court also cited policy concerns to justify the limitation of the DOC's jurisdiction. It held that violations from prior periods of parole would be hard to prove and difficult to defend against, and that serious violations committed during an earlier parole period could be addressed through new criminal charges. *Id.*, ¶ 16.

¶ 9. In dissent, Judge Charles B. Schudson found the phrase "term of supervision" in Wis. Stat. § 304.072(3) ambiguous, because reasonable, well-informed State officials could not agree on its meaning. Judge Schudson relied on extrinsic sources such as apparent legislative intent, case law, and the interplay of statutes, to determine that the phrase "term of supervision" encompasses an individual's entire sentence. He specifically noted that the apparent legislative intent behind § 304.072(3) and the provision's interplay with other parole statutes, specifically Wis. Stat. §§ 302.11(6) and (7)(d), make clear that the court of appeals erroneously interpreted the statute. *Id.*, ¶¶ 19–20 (Schudson, J., dissenting).

¶ 10. The DOC petitioned for review of the decision of the court of appeals. We accepted review, and we now reverse.

II

¶ 11. This case turns on whether the phrase "term of supervision" within Wis. Stat. § 304.072(3) allows the DOC to retain jurisdiction over a prisoner's entire sentence. This issue of statutory interpretation presents a question of law, which we review de novo,

independently of the reasoning of the circuit court and court of appeals, but benefiting from their analyses. *See State v. Lombard,* 2004 WI 95, ¶ 17, 273 Wis. 2d 538, 684 N.W.2d 103.

¶ 12. The purpose of statutory interpretation is to "determine what the statute means so that it may be given its full, proper, and intended effect." *State ex rel. Kalal v. Circuit Court,* 2004 WI 58, ¶ 44, 271 Wis. 2d 633, 681 N.W.2d 110. " 'We assume that the legislature's intent is expressed in the statutory language.' " *Lombard,* 273 Wis. 2d 538, ¶ 18 (quoting *Kalal,* 271 Wis. 2d 633, ¶ 44).

¶ 13. Accordingly, our analysis of Wis. Stat. § 304.072(3) should begin with its plain language. *Kalal,* 271 Wis. 2d 633, ¶ 45. If we determine that the language of the statute " 'yields a plain, clear statutory meaning, then there is no ambiguity, and the statute is applied according to this ascertainment of its meaning.' " *Id.,* ¶ 46 (quoting *Bruno v. Milwaukee County,* 2003 WI 28, ¶ 8, 260 Wis. 2d 633, 660 N.W.2d 656). Where such statutory language is unambiguous, we need not consider extrinsic sources of interpretation. *See Meriter Hosp. Inc. v. Dane County,* 2004 WI 145, ¶ 13, 277 Wis. 2d 1, 689 N.W.2d 627; *see also Kalal,* 271 Wis. 2d 633, ¶ 46.

¶ 14. Conversely, if the statute "is capable of being understood by reasonably well-informed persons in two or more senses," then the statute is ambiguous. *Kalal,* 271 Wis. 2d 633, ¶ 47. Only when the statutory language is ambiguous may we consult extrinsic sources to ascertain legislative intent. *Id.,* ¶ 51. "By 'extrinsic

sources' we mean interpretive resources outside the statutory text—typically items of legislative history." *Id.,* ¶ 50 (citation omitted). Additionally, in certain circumstances, "[a]mbiguity can be found in the words of the statutory provision itself, or by the words of the provision as they interact with and relate to other provisions in the statute and to other statutes." *State v. Sweat,* 208 Wis. 2d 409, 416, 561 N.W.2d 695 (1997) (citation omitted).

¶ 15. This case also requires us to review an administrative agency decision. We must decide whether the DHA properly interpreted Wis. Stat. § 304.072(3) as a matter of law, and we are not bound by its determination. *See Dodgeland Educ. Ass'n v. WERC,* 2002 WI 22, ¶ 22, 250 Wis. 2d 357, 639 N.W.2d 733. Frequently, we defer to an administrative agency's interpretation of a statute, "[i]f the agency's 'experience, technical competence, and specialized knowledge aid the agency in its interpretation and application of the statute. . . .'" *Id.* (citing *West Bend Educ. Ass'n v. WERC,* 121 Wis. 2d 1, 12, 357 N.W.2d 534 (1985)). To review an agency's statutory interpretation, this court generally applies one of three standards of review, with varying degrees of deference. *See Keup v. DHFS,* 2004 WI 16, ¶ 12, 269 Wis. 2d 59, 675 N.W.2d 755. The three standards of deference that we apply are great weight, due weight, or de novo: *See id.*

> First, if the administrative agency's experience, techni-cal competence, and specialized knowledge aid the agency in its interpretation and application of the statute, the agency determination is entitled to "great weight." The second level of review provides that if the agency decision is "very nearly" one of first impression it is entitled to "due weight" or "great bearing." The

lowest level of review, the *de novo* standard, is applied where it is clear from the lack of agency precedent that the case is one of first impression for the agency and the agency lacks special expertise and experience in determining that question presented.

*Dodgeland,* 250 Wis. 2d 357, ¶ 22 (quoting *Jicha v. DILHR,* 169 Wis. 2d 284, 290–91, 485 N.W.2d 256 (1992)). Because both parties agree that this case presents a question of first impression, we conclude that de novo review is applicable to the case before us.

## III

¶ 16. With these principles in mind, we turn to the statute in question. Wisconsin Stat. § 304.072(3) provides:

> Except as provided in s. 973.09(3)(b), the department preserves jurisdiction over a probationer, parolee or person on extended supervision if it commences an investigation, issues a violation report or issues an apprehension request concerning an alleged violation prior to the expiration of the probationer's, parolee's or person's term of supervision.

¶ 17. According to Dowell, the court of appeals correctly determined that Wis. Stat. § 304.072(3) was unambiguous. He contends that the phrase "term of supervision" plainly means the current period of time that a "probationer, parolee, or person on extended supervision" is being supervised. He argues that the DOC exceeded its jurisdiction by revoking his current term of parole for a violation that occurred during a previous term of parole.

¶ 18. The DOC, on the other hand, argues that the phrase "term of supervision" could mean one of two things. First, the phrase could mean a "final discharge

from the underlying sentence." Second, the phrase could mean "that a period of supervision ends when revocation or some other event occurs." Although the DOC emphasizes that the more logical interpretation is that the phrase means final discharge from the entire sentence, because the statute relates to jurisdiction over the person, it also argues that either interpretation is reasonable, thereby making the statute ambiguous.

¶ 19. We agree with the DOC that both interpretations of Wis. Stat. § 304.072(3) are reasonable. As stated, if the statute "is capable of being understood by reasonably well-informed persons in two or more senses," then the statute is ambiguous. *Kalal,* 271 Wis. 2d 633, ¶ 47 (citations omitted). In this case, there is inconsistency in interpreting § 304.072(3) between state agencies, the circuit court, and the court of appeals: "Here, where even State officials are at odds over the interpretation of these seemingly simple words, one thing seems quite clear: 'term of supervision' is ambiguous." *Schwarz,* 275 Wis. 2d 225, ¶ 19 (Schudson, J., dissenting).

¶ 20. Furthermore, if Wis. Stat. § 304.072(3) were not ambiguous, the court of appeals would not have needed to insert the word "current" into its interpretation of the statute. The court held that "[t]he only reasonable interpretation of the statute is that the DOC's jurisdiction to initiate parole revocation proceedings is limited to the current 'term of supervision.' " *Id.,* ¶ 11. By adding the word "current" into its interpretation of § 304.072(3), the court of appeals attempted to make an ambiguous provision unambiguous. We will not "read into the statute language that the legislature did not put in." *Brauneis v. State,* 2000 WI 69, ¶ 27, 236 Wis. 2d 27, 612 N.W.2d 635 (citation omitted). "One of

the maxims of statutory construction is that courts should not add words to a statute to give it a certain meaning." *Fond du Lac County v. Town of Rosendale,* 149 Wis. 2d 326, 334, 440 N.W.2d 818 (Ct. App. 1989) (citation omitted). Such an action is a clear sign that the statutory language, as written, is ambiguous. Upon determination of an ambiguous statute, we shift our focus to extrinsic sources for the ascertainment of legislative intent.

¶ 21. We agree with the DOC that the proper methodology is to examine the legislative history and case law behind Wis. Stat. § 304.072(3), and the interplay among several parole statutes. In doing so, it becomes clear to us that the legislature intended to provide the DOC with jurisdiction to enforce offender accountability throughout the term of parole, until the expiration of the entire underlying sentence.

¶ 22. We begin our analysis of extrinsic sources with the legislative history behind Wis. Stat. § 304.072(3).[5] Subsection (3) of § 304.072 was added to the statute in 1983 Act 528, § 20.[6] In enacting 1983 Act 528, the legislature made various changes relating to parole. Materials were incorporated in the drafting record that provide insight into legislative intent. In the drafting record, prepared by the Legislative Reference Bureau, we find evidence of the legislature's intent to preserve DOC jurisdiction and promote offender accountability. We have previously held that analysis by

_____

[5] The court of appeals did not discuss the legislative history behind Wis. Stat. § 304.072(3). It held: "Inasmuch as we are satisfied that the statute is not ambiguous, we need not resort to extrinsic aids to ascertain the meaning of § 304.072(3)."

[6] When 1983 Act 528 was drafted, the statute in question was numbered Wis. Stat. § 57.072. It was not renumbered until 1989 Act 107, § 1704.

the Legislative Reference Bureau "is significant in determining legislative intent." *See Milwaukee v. Kilgore,* 193 Wis. 2d 168, 184, 532 N.W.2d 690 (1995) (citation omitted).

¶ 23. In the drafting record, under the heading, "Toll on Period of Probation or Parole," the Legislative Reference Bureau stated, "[t]he bill also provides a procedure for the department to preserve its probation or parole jurisdiction by taking certain action prior to the expiration of a term of supervision." From this statement, we are able to find support for the conclusion that the legislature intended to promote offender accountability for violations by providing a method to continue jurisdiction past the expiration date for parole supervision.[7]

¶ 24. Evidence of the intent to provide for offender accountability is furnished by the legislature's decision to codify *Cox,* when enacting 1983 Act 528, § 20. While we have held that "when the legislature enacts a statute, it is presumed to do so with full knowledge of the existing law," *Peters v. Menard, Inc.,* 224 Wis. 2d 174, 187, 589 N.W.2d 395 (1999) (citations

---

[7] The DOC makes another argument that seems to strengthen its position that the legislative intent behind 1983 Wis. Act 528 was to extend personal jurisdiction over offenders on parole. It cites a drafting note in the record by Senior Legislative Attorney Bruce Feustel. The note applies to Wis. Stat. § 53.11 (later renumbered as Wis. Stat. § 302.11), and states in relevant part:

> Note: This addition to the revised s. 53.11 is intended to clarify that the *only* time which actually vests, or cannot be taken away from a convicted offender is time spent in prison or in jail in connection with the underlying offense. Therefore, if a parolee serves a period of time under supervision prior to violation of parole and revocation, this period is automatically forfeited, and is added to the time to be served after the parolee is re-released. . . .

omitted), this presumption is strengthened by direct evidence in the Drafting Record that the legislature considered the *Cox* decision when amending the statute.[8] In *Cox,* the defendant claimed that the Department of Health and Social Services (DHSS) did not have jurisdiction to revoke his probation. The DHSS issued a warrant during the defendant's probationary term and did not order revocation until after his probation term was effectively over. The court of appeals held that the DHSS had jurisdiction. It further held that "[t]o require custody to toll the probation period would effectively deprive the Department of any control over a probationer during the last months of the probationary term." *Cox,* 105 Wis. 2d at 381 (citation omitted).

¶ 25. We next examine the interplay among several statutes relating to parole. The DOC cites Wis. Stat. § 302.11(6)[9] and (7)(d)[10] for the proposition that a

---

[8] There is a page in the Drafting Record which states the following:

"57.072 Jurisdiction of Prorlee [sic]

*State ex rel. Cox v. State DHSS,* 105 Wis. 2d 378

Probation violation warrant issued during probation period preserved revocation jurisdiction even though not executed."

*See* Drafting Record to 1983 Act 528, § 20.

[9] Wisconsin Stat. § 302.11(6) provides, in relevant part: "Any inmate released on parole under sub. (1) or (1g)(b) or s. 304.02 or 304.06(1) is subject to all conditions and rules of parole until the expiration of the sentence or until he or she is discharged by the department."

[10] Wisconsin Stat. § 302.11(7)(d) states: "A parolee who is subsequently released either after service of the period of time determined by the reviewing authority or by a grant of parole under par. (c) is subject to all conditions and rules of parole until expiration of sentence or discharge by the department."

parolee is responsible for parole violations until the expiration of his or her underlying sentence. Both statutes refer only to parole, not probation or extended supervision, and use the phrase "expiration of sentence" instead of "term of supervision." More important, both statutes were repealed and recreated in 1983 Act 28, the same bill that produced Wis. Stat. § 304.072(3).

¶ 26. Dowell argues, and the court of appeals' majority agreed, that harmonizing the statutes is neither necessary nor appropriate. Dowell argues that the DOC cannot incorporate the language of other parole statutes into Wis. Stat. § 304.072(3) and ignore the legislature's use of the phrase "term of supervision." The majority of the court of appeals held that because the legislature used the phrase "term of supervision," instead of the phrase "expiration of sentence," which is used in Wis. Stat. § 302.11(6) and (7)(d), it intended to limit the DOC's jurisdiction to commence parole revocation proceedings under § 304.072(3) to the current "term of supervision." Specifically, the court held: "Had the statute been worded to read that the DOC retained jurisdiction until the 'expiration of sentence' or until the 'date of the person's final discharge from parole, probation, or extended supervision,' it would yield the result desired by the DOC." *Schwarz,* 275 Wis. 2d 225, ¶ 16.

¶ 27. The DOC further argues that Wis. Stat. § 304.072(3) must be read together with and harmonized with other statutes relating to parole, particularly Wis. Stat. § 302.11(6) and (7)(d), in order to fully discern legislative intent. *See State v. Leitner,* 2002 WI 77, ¶ 30, 253 Wis. 2d 449, 646 N.W.2d 341 (footnote omitted) ("[a] general rule of statutory interpretation is that statutes dealing with the same subject matter should be read together and harmonized"). The DOC

maintains that §§ 302.11(6) and (7)(d) clearly demonstrates that the DOC's jurisdiction is not divided into terms, but is rather one single term of continuous supervision.

■■

¶ 28. We agree with the DOC that the interplay among statutes relating to parole is helpful in determining the legislature's apparent intent behind the phrase "term of supervision." It is our duty to attempt to harmonize statutes that are allegedly in conflict, if it is possible, "in a way which will give each full force and effect." *Kilgore,* 193 Wis. 2d at 184 (citation omitted). As stated, both Wis. Stat. § 302.11(6) and (7)(d) use the term "expiration of sentence" when referring to the DOC's jurisdiction of parole violations. This is important to emphasize, because the majority of the court of appeals denied jurisdiction, in part, on its holding that the legislature instead chose to use the phrase "term of supervision" when enacting Wis. Stat. § 304.072(3). We disagree with the reasoning of the court of appeals' majority. The legislature could not have used the phrase "expiration of sentence" in § 304.072(3), because that statute applies to parole, probation, and extended supervision, and probation is not a sentence. Judge Schudson, in his dissent, stated that this "all but defeats the majority's rationale." *Schwarz,* 275 Wis. 2d 225, ¶ 20 (Schudson, J., dissenting).

¶ 29. We also recognize that Wis. Stat. § 304.072(3) concerns the DOC's jurisdiction of a person, rather than the Department's jurisdiction, specifically, over a parole violation.[11] The circuit court cor-

---

[11] The circuit court correctly held that Wis. Stat. § 304.072(3) is a personal jurisdiction statute. It held: "Section 304.072(3) allows the department to retain jurisdiction over a *person* on supervision after the regularly scheduled maximum

rectly made this distinction and we agree with its reasoning:

> The hearing examiner and the Division relied entirely on § 304.072(3), however this statute is silent with respect to the department's jurisdiction over a parole violation. For this reason, the court must look to other statutes governing parole violation. Specifically, § 304.06(3)[12] provides that every paroled prisoner remains in custody of the department until his or her discharge date, and the department may take physical custody of any prisoner for the investigation of alleged parole violations. Section 304.072(3), when read in conjunction with other statutes governing parole supervision, implicitly authorizes the department to hold offenders accountable for all behaviors in violation of the rules until final discharge from the entire sentence.

¶ 30. We agree with the DOC that the legislative history, codification of *Cox,* and the interplay among the statutes discussed are "instructive as to how and when an offender is suspected of violating supervision and the case is near discharge." This evidence of legislative intent surrounding the enactment of Wis. Stat. § 304.072(3) strengthens our conclusion that the legis-

---

discharge date when the DOC takes one of three prescribed actions. ... [T]his statute is silent with respect to the department's jurisdiction over a parole violation."

[12] Wisconsin Stat. § 304.06(3) states, in relevant part:

Every paroled prisoner remains in the legal custody of the department unless otherwise provided by the department. If the department alleges that any condition or rule of parole has been violated by the prisoner, the department may take physical custody of the prisoner for the investigation of the alleged violation. If the department is satisfied that any condition or rule of parole has been violated it shall afford the prisoner such administrative hearings as are required by law.

lature intended to preserve DOC jurisdiction until the offender's final date of discharge from his or her entire sentence.

¶ 31. Our interpretation of legislative intent, stated above, is also consistent with sound principles of public policy. By allowing the DOC to retain jurisdiction over a parolee until the parolee's date of discharge from the entire sentence, we are allowing it to hold an offender accountable for all violations committed during his or her entire sentence. In this case, our decision means that Dowell's parole will be revoked, and he will serve the final two years, one month, and 14 days of his original sentence in prison. Any other interpretation could, in effect, create amnesty for a parole offender who committed a violation during an earlier period of parole, and reward such offender for successfully concealing the violation.

¶ 32. Both Dowell and the majority of the court of appeals argue, however, that because Dowell was convicted criminally for his parole violation, he will be held sufficiently accountable. The court of appeals' majority held "[a]ny criminal act committed during an earlier parole is subject to a new criminal charge. Dowell can attest to this fact—his earlier parole violation resulted in an eighty-year sentence." *Schwarz,* 275 Wis. 2d 225, ¶ 17.

¶ 33. Although this may satisfy the accountability concern in this particular case, we recognize that in other cases it will not. For example, under the approach of the majority of the court of appeals, if Dowell, or an offender like him, had committed a noncriminal parole violation during his first period of parole, that was not uncovered during that initial parole period, there would be no accountability or liability for the violation. We recognize that because "parole may be revoked for

conduct which does not violate the criminal law," *State ex rel. Flowers v. H&SS*, 81 Wis. 2d 376, 385, 260 N.W.2d 727 (1978) (citation omitted), a violation of parole, absent DOC jurisdiction, would go unpunished. This clearly violates public policy favoring accountability.

¶ 34. Additionally, our interpretation of Wis. Stat. § 304.072(3) results in the treatment of all parole violators with fairness and consistency. This point is illustrated with an example that the DOC provided in its brief:

> Offender A is convicted of First Degree Sexual Assault and receives a 20–year sentence. Offender A is released to parole after 10 years, but is revoked for absconding and returned to prison for one year and subsequently released again to parole. After several months the agent discovers Offender A committed another sexual assault during the first term of parole and gets a no revoke ruling pursuant to the Division of Hearings and Appeals' position in this case. Compare this to Offender B with an identical sentence structure who is revoked after two years on parole for committing a sexual assault and is returned to prison for the entire ten years remaining on the sentence. Similar violations, but remarkably dissimilar results. Moreover, this disparity is unfair to both offenders and victims. Such a system does not promote consistency, fairness or public safety. (Footnote omitted.)

¶ 35. Although the court of appeals' majority based its decision, in part, on its view of public policy, its position is not persuasive. The majority stated: "Not only would stale violations be difficult to prove or defend against, but a truly rehabilitated person who earned the right to be paroled might be confronted with long-ago violations never pursued during the earlier 'term of supervision.' " *Schwarz*, 275 Wis. 2d 225, ¶ 16.

While these policy concerns may be legitimate, they are trumped by the need for offender accountability, concern with rehabilitation, and the need for fairness and consistency within the parole system.

## IV

¶ 36. In sum, we hold that the phrase "term of supervision" in Wis. Stat. § 304.072(3) is ambiguous, since it can reasonably be interpreted to apply to both the current term of supervision and any time prior to the final discharge from an underlying sentence. We rely upon extrinsic sources such as the legislative history and relevant case law behind § 304.072(3), and the interplay among parole statutes to determine that "term of supervision" was intended to apply to all parole violations that occur before the offender's date of discharge from his or her entire sentence. We conclude that the legislature intended to promote offender accountability and, therefore, the DOC had jurisdiction to revoke Dowell's parole for a violation that he committed during his first period of parole supervision.

*By the Court.*—The decision of the court of appeals is reversed, and the cause is remanded for further proceedings consistent with this opinion.

¶ 37. SHIRLEY S. ABRAHAMSON, C.J. (*dissenting*). I would affirm the decision of the court of appeals.

¶ 38. The question presented is whether parole revocation proceedings authorized by Wis. Stat. § 304.072(3) can be initiated during a second term of parole based solely on the parolee's conduct during the parolee's first term of parole. To "answer" this question, the majority opinion examines case law, legislative

history, and other statutes. None of these sources supports the majority opinion's holding. I therefore dissent.

¶ 39. The lone case-law authority, *State ex rel. Cox v. DHSS*, 105 Wis. 2d 378, 314 N.W.2d 148 (Ct. App. 1981), does not support the majority's holding. *See* majority op., ¶ 24. *Cox* stands for a simple proposition: When the department with jurisdiction over a probationer issues a probation violation warrant before the expiration of the probationary term, the running of that term is tolled.[1] The execution of the warrant and the revocation proceedings need not occur within that probationary term, only the issuance of the warrant.[2] As the court of appeals correctly noted in *Cox*, to require all revocation proceedings to occur within the probationary term would "effectively deprive the Department of any control over a probationer during the last months of the probationary term."[3]

¶ 40. *Cox*'s holding remains a simple proposition when applied to the instant case: If the Department wants to revoke parole before the expiration of the parole term, it must initiate revocation proceedings before the expiration of the parole term.

¶ 41. *Cox* brings us no closer to understanding what "term of supervision" might mean. *Cox* neither uses the phrase "term of supervision" nor deals with a situation in which the defendant was twice placed on parole or probation and the second parole or probation term was revoked based on conduct occurring during the first term.

---

[1] *State ex rel. Cox v. DHSS*, 105 Wis. 2d 378, 380, 314 N.W.2d 148 (Ct. App. 1981).

[2] *Id.* at 381.

[3] *Id.*

¶ 42. Legislative history does not support the majority's holding. According to the majority opinion, the drafting records indicate that Wis. Stat. § 57.072 (the precursor to Wis. Stat. § 304.072) codified *Cox*.[4] I agree, but without more, the legislative history is no more useful than is *Cox* in divining the meaning of the phrase "term of supervision."

¶ 43. The drafting records provide two tea leaves for the majority opinion to contemplate; neither resolves the issue presented in this case. One handwritten note cites *Cox* and posits, "Probation violation warrant issued during probation period preserved revocation jurisdiction even though not executed."[5] Another note in the record succinctly states what the Legislature likely gleaned from *Cox:* "The bill also provides a procedure for the department to preserve its probation or parole jurisdiction by taking certain action prior to the expiration of a term of supervision."[6] Neither *Cox,* nor the legislative history codifying *Cox,* provides the answer to the question presented.

¶ 44. The majority opinion, like the dissent in the court of appeals, then turns to other statutes, putting significant weight on language contained in Wis. Stat. §§ 302.11(6)[7] and (7)(d).[8] These two statutes state that a parolee is subject to all conditions and rules of parole

---

[4] Majority op., ¶ 24 (citing 1983 Act 528, § 20).

[5] *Id.,* ¶ 24 n.8 (citing Drafting records for 1983 Act 528).

[6] *Id.,* ¶ 23 (citing Drafting Records for 1983 Act 528).

[7] Wisconsin Stat. § 302.11(6) reads in relevant part as follows: "Any inmate released on parole . . . is subject to all conditions and rules of parole until the expiration of the sentence or until he or she is discharged by the department."

[8] Wisconsin Stat. § 302.11(7)(d) reads in relevant part as follows: "A parolee who is subsequently released either after service of the period of time determined by the reviewing

until the "expiration of [the] sentence" or until he or she is "discharge[d] by the department." These two chapter 302 statutes use the phrases "expiration of [the] sentence" and "discharge[d] by the department" rather than the phrase "term of supervision."

¶ 45. The chapter 302 provisions do not provide a mechanism for revocation of parole, probation, or extended supervision. They certainly do not tell us what "term of supervision" means; they never use the phrase. They do not tell us whether Wis. Stat. § 304.072(3) allows action taken by the Department in a second term of parole to be based solely on conduct occurring during a parolee's first term of parole.

¶ 46. After reviewing the three sources upon which the majority hangs its hat, the question remains: What does "term of supervision" as used in Wis. Stat. § 304.072(3) mean, and can conduct during a term of parole lead to revocation of a second term of parole? None of the sources, separately or together, support any more than the simple proposition first stated in *Cox*: The Department tolls the running of a term of probation, parole, or extended supervision when it takes certain action before the expiration of that term.

¶ 47. I agree with the court of appeals that the statutory phrase "term of supervision" means exactly what it says. The text of the statute matters. When the legislature wanted to refer to "expiration of the sentence" and "discharged by the department," it used those words.

¶ 48. The Department of Corrections' jurisdiction in parole matters is limited to seeking revocation only for violations that occur during that term of supervi-

authority or by a grant of parole . . . is subject to all conditions and rules of parole until expiration of sentence or discharge by the department."

sion. This interpretation does not hinder the state in prosecuting crime and does not threaten public safety. The State can prosecute a parolee for criminal conduct committed during any period of parole, and the parolee may be subject to imprisonment. In the present case, for example, the defendant's parole violation during his first parole was prosecuted as a crime, resulting in an eighty-year sentence.

¶ 49. For the reasons set forth, I dissent.

¶ 50. I am authorized to state that Justices ANN WALSH BRADLEY and LOUIS B. BUTLER, JR. join this dissent.